UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY A. CHEN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: |
| ) | |
| **THE COLLEGE OF NEW JERSEY,** and ) | |
| **SUSAN MITCHELL,** Individually and in her ) | |
| Capacity as an Employee of The College of ) | |
| New Jersey, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

The Plaintiff, Mary A. Chen ("Plaintiff"), moves this Court for entry of judgment in her favor against Defendants The College of New Jersey ("Defendant TCNJ") and Susan Mitchell ("Defendant Mitchell") (collectively "Defendants") and in support of such Complaint avers as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is a civil action under Title 42, United States Code, Section 1983 ("42 U.S.C. Section 1983," "Section 1983"), seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States, specifically, Plaintiff's First Amendment and Equal Protection rights as applied to state and local governments under the Fourteenth Amendment.

2. This case arises under the United States Constitution and 42 U.S.C. Sections 1983 and 1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 1331.

1

The declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.

3. Plaintiff brings this action resulting from damages incurred due to the unlawful conduct of Susan Mitchell in her capacity as an Assistant Professor for the Nursing Program for The College of New Jersey on or about April 15, 2013 and April 22, 2013. Plaintiff was wrongfully retaliated against for exercising her fundamental right to free speech under the First Amendment, resulting in a failure to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

4. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. Section 1391(b)(2). The actions complained of took place in this judicial district and evidence relevant to the allegations are maintained in this judicial district.

**PARTIES**

5. The Plaintiff, MARY A. CHEN is a Registered Nurse and currently employed with Bayada Home Care in Lawrenceville, New Jersey.

6. The Defendant, THE COLLEGE OF NEW JERSEY, is a public, coeducational university located in the Trenton suburb of Ewing Township, New Jersey. As a public university, Defendant TCNJ was and is predominately funded by public means, specifically through and by the State of New Jersey, and as such, was and is acting under color of state law.

7. The Defendant, SUSAN MITCHELL, is a citizen and resident of New Jersey, and was and is at all times material to the allegations in this Complaint, acting as an "agent" for Defendant TCNJ in her capacity as an Assistant Professor for TCNJ's Nursing Program, and therefore, was and is acting under color of state law.

**FACTS**

8.     Plaintiff became a Registered Nurse ("RN") in or about 1996, after graduating from the Nursing Program at Helene Fuld School of Nursing in Trenton, New Jersey, and has worked as an RN ever since.

9.     In or about 2009, Plaintiff decided that she want to pursue her Masters of Science of Nursing ("MSN"), a common "next-step" for RN's seeking to further their education and career. Plaintiff applied for the MSN program at Defendant TCNJ that same year and was subsequently advised that she was accepted to the MSN program, with the caveat that certain prerequisite classes would have to be completed.  These prerequisite classes were commonly referred to by staff and students as the "bridge program."  Plaintiff began the bridge program with Defendant TCNJ at the Ewing, New Jersey campus in or about 2010.

10.    In 2013, Plaintiff enrolled in a required course for the bridge program entitled Community Nursing.  The professor for the course was Defendant Mitchell.  From the beginning of the semester in or about January, 2013 until in or about April 10, 2013, Defendant Mitchell was pleasant and affable to Plaintiff.

11.    On or about April 10, 2013, Defendant Mitchell administered to the class of Community Nursing an examination ("Exam #2").  After the examination, Plaintiff boarded an elevator to exit the building.  In the elevator were two students from the Community Nursing class who had also just taken the examination and an instructor employed by Defendant TCNJ.  While riding on the elevator, Plaintiff stated to her fellow students as follows: "Wow, in 20 years of nursing I have never used this stuff.  You probably won't either."  Plaintiff's comment was protected conduct, insofar as Plaintiff's speech was a type traditionally covered under the First Amendment.

12. On April 15, 2013, Plaintiff visited Defendant Mitchell's office to retrieve a graded written group assignment. When Plaintiff arrived, she identified herself by name to Defendant Mitchell. Defendant Mitchell replied in a sarcastic and intimidating tone and stated "oh, I know exactly who you are Ms. Chen." Plaintiff was unaware as to why Defendant Mitchell was speaking to her in such a tone, or the subtext of Defendant Mitchell's comment.

13. On April 22, 2013, Plaintiff was exiting the Nursing Department Office after completing a make-up examination. Defendant Mitchell approached Plaintiff asking if she could speak with her. Plaintiff agreed at which point Defendant Mitchell advanced upon Plaintiff physically – placing her face within a few inches of Plaintiff's face and pointing. Defendant Mitchell then stated to Plaintiff in a menacing tone that she "heard you [Plaintiff] were spouting off in the elevator about the exam." Plaintiff responded that she had in fact stated to two fellow students that in her years of experience as an RN she had never utilized the material that was the subject of the exam, and that they likely would not either. Defendant Mitchell then leaned in closer and stated to Plaintiff that she "better watch it." Defendant Mitchell asked Plaintiff if she knew who told Defendant Mitchell about the conversation on the elevator, and Plaintiff stated she assumed it was the TCNJ instructor that was also on the elevator at the time. Defendant Mitchell confirmed that it was in fact the TCNJ instructor who had informed Defendant Mitchell of Plaintiff's comments. Defendant Mitchell proceeded to advise Plaintiff, in an aggressive manner, that although the material may not have been previously utilized by Plaintiff in her real work experiences, it would be needed for Plaintiff's graduate studies. Defendant Mitchell ended the conversation by advancing even closer to Plaintiff physically and advising Plaintiff once again that she had better "watch it."

14.     On that same day, April 22, 2013, at approximately 4:33 p.m., Plaintiff, who was mentally and physically shaken by Defendant Mitchell's physical and verbal threats, dispatched an electronic mail to Defendant Mitchell.  In the email, Plaintiff advised Defendant Mitchell that she did not believe that the comment she made in the elevator to her fellow students was necessarily derogatory and that her statement was "well within my [Plaintiff's] right for freedom of speech . . ."  Plaintiff recapitulated the events of the confrontation and advised Defendant Mitchell that she felt "very threatened by your [Mitchell's] behavior."  Plaintiff then stated that she did not "think any person regardless of position, post graduate degree held, or anything else for that matter entitles one person to threaten another person."  Plaintiff ended the email by stating that she "would appreciate it if you [Mitchell] wouldn't feel the need to make it any tougher by 'petty gossip' and threatening words/behaviors."  (*See* Exhibit "A," April 22, 2013 email from Plaintiff to Defendant Mitchell, attached hereto).

15.     On that same day, at approximately 5:56 p.m., Defendant Mitchell responded by email to Plaintiff's electronic correspondence.  In the email, Defendant Mitchell confirmed that what she had "heard" from the TCNJ instructor was exactly what Plaintiff had stated she said in the elevator.  Defendant Mitchell then stated that Plaintiff's "rather anti-intellectual views" would not be held against her. Defendant Mitchell proceeded further by stating "[I]t is not my [Mitchell's] status as a professor with an advanced degree that entitles me to confront you with your unprofessional behavior, but my status as a nursing professional which requires me to do so." Defendant Mitchell then suggested a meeting with the Dean and Graduate Coordinator, and sought permission to forward the email chain to same, seeking dates and times when Plaintiff would be available for a meeting.  (*See* Exhibit "B," April 22, 2013 email from Defendant Mitchell to Plaintiff, attached hereto).

16. At 6:42 p.m. on April 22, 2013, Plaintiff provided, via email, dates and times that worked with her schedule for a meeting. At 6:57 p.m. on April 22, 2013, Defendant Mitchell forwarded the email chain to the Dean Blicharz, Graduate Coordinator Lindberg, and Assistant Dean Scarpati, advising that Plaintiff believed that she had been threatened by Defendant Mitchell and advising that "I [Mitchell] would like to deal with this charge as soon as possible." (*See* Exhibit "C," April 22, 2013 emails from Plaintiff to Defendant Mitchell and from Defendant Mitchell to Blicharz, Lindberg, and Scarpati, attached hereto).

17. Based upon the content of the email by Defendant Mitchell, Plaintiff determined that the meeting Defendant Mitchell sought between herself, Plaintiff, Dean Blicharz, Graduate Coordinator Lindberg and Assistant Dean Scarpati was designed not to address the threatening behavior Defendant Mitchell displayed after learning of Plaintiff's comments on the elevator, but rather, to allege student misconduct under Defendant TCNJ's Student Conduct Manual which asserts that students of Defendant TCNJ must "conduct oneself professionally and with civility in all pursuits of knowledge in and outside the classroom."

18. The meeting was scheduled for April 24, 2013. After Community Nursing class but prior to the meeting, Plaintiff approached Defendant Mitchell to confirm the meeting was still scheduled to occur. Defendant Mitchell did not respond either affirmatively or negatively, but rather, directed Plaintiff to Assistant Dean Scarpati.

19. Plaintiff thereafter approached Scarpati to inquire about the scheduled meeting. Scarparti advised Plaintiff that "it doesn't work like that," and provided Plaintiff with a formal TCNJ harassment, intimidation, and bullying ("HIB") complaint form. However, Scarparti advised Plaintiff that she did not "necessarily have to complete the form." Plaintiff and Scarparti set a meeting date and time of April 25, 2013 at 1:30 p.m..

20. During the April 25, 2013 meeting, Plaintiff advised Scarparti of the confrontation Defendant Mitchell instigated and what was said and done. Scarparti advised Plaintiff that Defendant Mitchell "confronts students all the time." Scarparti provided Plaintiff with the student complaint procedure and advised Plaintiff of the steps she would need to take to formally institute a student HIB complaint. Plaintiff had completed the HIB complaint form Scarparti had previously provided to her despite his assertion that it did not necessarily have to be completed, and provided Scarparti's assistant with said complaint, which was date stamped and placed in Defendant Mitchell's internal "mailbox."

21. On April 28, 2013, the night before Plaintiff's final class presentation in Defendant Mitchell's class, Defendant Mitchell emailed Plaintiff to advise her "as a courtesy" that it was Plaintiff's responsibility to make an appointment with Defendant Mitchell as proscribed in the student complaint procedure.

22. On April 29, 2013, Plaintiff and several of her fellow students were preparing for their group final class presentation. Plaintiff advised her group that she was nervous about the presentation. Defendant Mitchell, who unbeknownst to Plaintiff, had been listening to her, then stated in a sarcastic tone "Ms. Chen, you're not under stress about anything are you?"

23. On that same day, April 29, 2013, when the presentations had concluded and class had ended, Plaintiff searched the campus in an attempt to locate a potential anti-bullying specialist at Defendant TCNJ. Plaintiff was directed to Ms. Robbin Loonan, Coordinator of the Anti-Violence Initiatives programs of Defendant TCNJ. After conferring with Loonan, Plaintiff was re-directed to Ms. Kerri Thompson-Tillett, Title IX Coordinator and Director of the EEO and Diversity/Human Resources Department of Defendant TCNJ, who Plaintiff thereafter emailed seeking assistance and providing a copy of the HIB complaint she had filed.

7

24. On May 8, 2013, Ms. Thompson-Tillett advised Plaintiff that her issue with Mitchell did not fall under Defendant TCNJ's discrimination policy. Ms. Thompson-Tillett then recommended mediation.

25. In total, five high-level individuals of Defendant TCNJ were notified of Mitchell's threatening behavior, including the Dean, an Assistant Dean, the Coordinator of the Anti-Violence Initiatives program, and the Director of the EEO and Diversity department of Defendant TCNJ. Not one assisted Plaintiff, and she was forced to complete the Community Nursing course under great duress.

26. After Plaintiff completed her Spring, 2013 semester at Defendant TCNJ, she withdrew from the bridge program. Soon after her withdrawal, Plaintiff received notification that she had been accepted to the TCNJ MSN program. Plaintiff thereafter enrolled in the Rutgers RN to BSN Program with aspirations of obtaining her Doctorate. The emotional toll of the events beginning on April 15, 2013 resulted in Plaintiff's inability to continue her education. Plaintiff withdrew from the Rutgers program before completing her first semester there.

27. In or about October, 2013, Plaintiff sought medical assistance for the duress she had and was continuing to suffer from, as a result of Defendants Mitchell and TCNJ's conduct and apathy. Plaintiff initially visited a psychiatrist who, after conducting her initial assessment, determined that Plaintiff suffered from Post Traumatic Stress Disorder ("PTSD"). The psychiatrist suggested two forms of medication for Plaintiff – Lexapro and Xanax – however, Plaintiff did not wish to take the medication and as a result, the psychiatrist could no longer treat Plaintiff due to insurance constraints. Plaintiff was referred to a trauma counselor, who Plaintiff visited weekly for treatment beginning in or about November, 2013 to the present (Plaintiff stopped treatment in or about the summer of 2014 because she believed she was feeling better, but had to begin treatment again in

the fall of 2014 when she had an acute reoccurrence of PTSD symptoms, the catalyst of which was the beginning of classes for the Rutgers program).

28. At no time did Plaintiff witness Defendant Mitchell treat any other students in her class in the same threatening, intimidating or harassing manner or method as Plaintiff. At no time was Plaintiff told by any other student or students in her class that they were being treated in the same threatening, intimidating or harassing manner or method by Defendant Mitchell as Plaintiff had been.

29. Plaintiff engaged in protected conduct after the exam on April 10, 2013, and suffered retaliation at the hands of Defendant Mitchell, with no intervention by Defendant TCNJ for that conduct. Further, the retaliation Plaintiff suffered was unwarranted and extraordinarily disproportionate to the protected conduct with which Plaintiff engaged – so much so that it would deter "a person of ordinary firmness" from engaging in that type of speech. Finally, there exists a direct link between the constitutionally protected conduct and the retaliatory action as demonstrated by Defendant Mitchell's affable conduct towards Plaintiff prior to the events of April 10, 2013, and Defendant Mitchell's threatening and harassing conduct towards Plaintiff after the events of April 10, 2013.

## CAUSES OF ACTION

### COUNT I

**EQUAL PROTECTION VIOLATION AS TO DEFENDANTS TCNJ and MITCHELL**
(*Olech* **Equal Protection "Class of One" - 42 U.S.C. § 1983**)

30. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-29 of this Complaint.

31.     Defendants TCNJ and Mitchell were "state actors" as TCNJ was and is a public institution, and Mitchell an employee thereof.

32.     Defendant Mitchell acted under "color of law" when she threatened and harassed Plaintiff.

33.     Defendant TCNJ acted under "color of law" when refusing to respond to Plaintiff's assertions of harassment and threatening behavior by Defendant Mitchell.

34.     As such, Defendants TCNJ and Mitchell failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

35.     Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and threatening behavior.

36.     Defendant Mitchell subjected Plaintiff to violations of her right to Equal Protection of Laws by failing to conduct herself appropriately, by taking unfair advantage of her status as a Professor to harass, intimidate, and threaten Plaintiff, and by attempting to continue to harass Plaintiff by suggesting Plaintiff violated the student code of conduct to high ranking TCNJ officials without cause.

37.     Defendant TCNJ subjected Plaintiff to violations of her right to Equal Protection of Laws by: failing to investigate Defendant Mitchell's misconduct; failing to appropriately discipline Defendant Mitchell, despite Defendant TCNJ's demonstrated knowledge that Defendant Mitchell frequently confronted students in a menacing manner; failing to adequately train and supervise Defendant Mitchell; and manifesting deliberate indifference to the ongoing harassment and threatening behavior of Plaintiff by Defendant Mitchell.

38. Plaintiff was intentionally treated differently from other similarly situated students by Defendant Mitchell and there was no rational basis for such treatment.

39. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment and threatening behavior fostered as a direct and proximate result of Defendant TCNJ and Defendant Mitchell and their deliberate indifference to her rights under the Fourteenth Amendment.

## COUNT II
## FIRST AMENDEMENT RETALIATION AS TO DEFENDANTS TCNJ and MITCHELL
(*Independence Twp* **First Amendment Retaliation - 42 U.S.C. § 1983**)

40. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-39 of this Complaint.

41. Plaintiff engaged in protected speech as provided to all citizens pursuant to the First Amendment of the United States Constitution.

42. Defendant Mitchell engaged in several adverse actions against Plaintiff that would deter "a person of ordinary firmness" from continuing to engage in that type of speech.

43. There is a direct cause-and-effect relationship between Plaintiff's protected speech and Defendant Mitchell's adverse actions.

44. The conduct and actions of Defendant Mitchell, acting under color of law, deprived Plaintiff of her rights to free expression and association.

45. The conduct and actions of Defendant Mitchell were done due to Defendant Mitchell's personal animus and bias against the content of Plaintiff's speech, and in retaliation against Plaintiff's exercise of her constitutionally protected speech.

46. Defendant Mitchell's actions had and continue to have an unlawful chilling effect on Plaintiff's right to free speech secured by the First Amendment to the United States Constitution.

47. Defendant Mitchell unlawfully retaliated against Plaintiff for exercising her right to free speech secured by the First Amendment to the United States Constitution.

48. Defendant TCNJ was notified of Defendant Mitchell's retaliation and failed to address, rectify, or attempt to rectify the constitutional violation committed by its employee, Defendant Mitchell.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MITCHELL

49. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-48 of this Complaint.

50. Defendant Mitchell's conduct was extreme and outrageous – conduct that in essence exceeded all reasonable bounds of decency.

51. Defendant Mitchell's conduct, described above, was intended to and did cause severe emotional distress to Plaintiff.

52. The conduct of Defendant Mitchell was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New Jersey.

53. As a result of the foregoing, Plaintiff was deprived of her freedom of speech, was subjected to emotional pain and suffering, and was otherwise damaged and injured.

## COUNT IV
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT MITCHELL**

54. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-53 of this Complaint.

55. Defendant Mitchell's conduct was careless and negligent as to the emotional health of Plaintiff, and caused severe emotional distress to Plaintiff.

56. The acts and conduct of Defendant Mitchell was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New Jersey.

57. As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious emotional pain and suffering, and was otherwise damaged and injured.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Defendants TCNJ and Mitchell as follows:

    A. Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances;

    B. Punitive damages;

    C. Injunctive relief requiring Defendant TCNJ to take effective steps to prevent harassment, intimidation and threatening behavior in its educational programs; fully investigate

conduct that may constitute harassment, intimidation and threatening behavior; appropriately respond to all conduct that may constitute harassment, intimidation and threatening behavior; and mitigate the effects of harassment, intimidation and threatening behavior that may arise from or contribute to it;

> D. Statutory interest;
>
> E. Costs; and
>
> F. Reasonable attorney fees.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

Dated: April 11, 2015   \_/s/Susan McCabe_____
Susan McCabe, Esquire
The Law Offices of Susan McCabe
24 Carriage Way
Barnegat, New Jersey 08005
(609) 290-0257

Attorneys for Plaintiff Mary A. Chen